**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Thomas A. Waldock, Trustee, et al.,            Case No. 3:17CV959

        Plaintiffs

      v.                                       **ORDER**

Rover Pipeline LLC, et al.,

        Defendants

This is a state-law tort action that one of the defendants, Rover Pipeline LLC, removed to this court on the basis of federal-question jurisdiction.

In February, 2017, Rover obtained a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission to build a natural gas pipeline that runs, in substantial part, through the Northern District of Ohio. *See Rover Pipeline LLC v. 5.9754 Acres of Land, More or Less, in Defiance Cnty., Ohio*, 2017 WL 3130244, *1 (N.D. Ohio).

After initiating condemnation proceedings in this court under the Natural Gas Act (NGA), *see* 15 U.S.C. § 717f(h), Rover obtained easements on the land over which the pipeline will run – including the nine parcels that the plaintiffs in this case own – and started construction.

In May, 2017, the plaintiffs sued Rover in the Wood County, Ohio, Court of Common Pleas. (Doc. 1–2). The gravamen of their eight-count complaint is that Rover damaged their respective properties by: 1) diverting excess water out of the easement areas and onto plaintiffs' land; and 2)

entering onto plaintiffs' property without permission. The same day that plaintiffs filed the complaint, Rover filed its notice of removal. (Doc. 1).

Pending is the plaintiffs' motion to remand the case to state court and for attorney fees. (Doc. 6). Because there is no federal-question jurisdiction in this case, and because Rover's arguments to the contrary are not objectively reasonable, I grant plaintiffs' motion in full.

## Background

### A. The State Court Complaint

Plaintiffs allege that "[t]his action arises from . . . Rover['s] . . . construction of the interstate natural gas pipeline known as the 'Rover Pipeline.'" (Doc. 1–2 at ¶2). That pipeline "crosses the properties owned by the Plaintiffs for thousands of feet in length." (*Id.*).

According to the plaintiffs, "[s]ince commencing construction in March, 2017," Rover has "flagrantly abused any easement rights obtained through the federal court proceeding, ha[s] intentionally – and repeatedly – trespassed on the residue farm property of the Plaintiffs by conducting operations well outside of any easement area obtained, and . . . ha[s] pumped water and waste material from the trenches [Rover is] installing onto areas outside of [the] easement area." (*Id.* at ¶6).

These problems stemmed, according to plaintiffs, from the "substantial amount of rainfall" that fell in Northwest Ohio during the Spring and, consequently, gathered "in Rover's non-exclusive easement[s] and dig sites." (*Id.* at ¶¶32–33).

Plaintiffs allege that Rover could have responded by "wait[ing] for the ground to dry" before starting construction or "de-water[ing] the easement area by pumping the water into trucks and hauling it away." (*Id.* at ¶38). Instead, Rover opted for a cheaper alternative and "de-watered the

2

easement by pumping the water and other liquid material out of the easement area and onto the Plaintiffs' properties." (*Id.*). This caused "significant flooding of the Plaintiffs' respective properties, all of which are currently utilized for commercial farming operations." (*Id.* at ¶39).

Based on these events, the plaintiffs brought eight causes of action:

**Count I – Trespass**: Rover, acting without authorization, dumped "storm water and ground water and . . fluids utilized in [Rover's] directional boring operations, onto the properties of the Plaintiffs." (*Id.* at ¶51). Rover "affirmatively entered onto Plaintiffs' respective properties in furtherance of the commission of these unauthorized intentional acts[.]" (*Id.* at ¶52).

**Count II – Nuisance**: Rover dumped storm water, ground water, and directional-boring fluids onto plaintiffs' land. (*Id.* at ¶57). Plaintiffs acknowledge Rover holds "easement rights pursuant to the U.S. District Court for the Northern District of Ohio's Order," but allege that Rover "nonetheless still owe[s] a duty not to create a nuisance . . . which interferes with the Plaintiffs' use, possession, and enjoyment of their respective property rights outside the easement area." (*Id.* at ¶56).

**Count III – Negligence and Hazardous Waste**: Rover negligently pumped excess storm water and hazardous materials onto plaintiffs' property. (*Id.* at ¶63).

**Count IV – Tortious Interference with Business**: Rover's actions "in flooding Plaintiffs' properties have substantially impeded and/or negatively impacted" plaintiffs' ability to use their property for commercial farming. (*Id.* at ¶69).

**Count V – Declaratory Judgment**: Plaintiffs ask the court to declare that Rover has abused its easement rights and breached the terms of its easements with the landowners. (*Id.* at ¶¶72–73).

**Count VI – Injunction**: Plaintiffs ask the court to enjoin Rover from "any further operation outside of the proscribed [*sic*] easement area" and "compelling the Defendants to remediate . . . any and all of the Defendants' pollutants, contaminates, hazardous substances, materials and/or wastes on and in Plaintiffs' respective properties." (*Id.* at ¶78).

**Count VII – Abuse of Power and Authority and Bad Faith**: Rover has "used and abused [its] eminent domain power beyond what was intended by Congress and ha[s] run roughshod over the rights of Plaintiffs as property owners[.]" (*Id.* at ¶81) (internal emphasis omitted).

**Count VIII – Punitive Damages**: Rover's conduct was "willful and malicious," thereby warranting punitive damages. (*Id.* at ¶85).

## B. Removal Proceedings

Rover's notice of removal alleged that this court has federal-question jurisdiction because plaintiffs' claims "arise[ ] under the [NGA]." (Doc. 1 at ¶¶3–4).[1]

In support, Rover argued that all of plaintiffs' claims revolved around the "dewatering necessary to construct the FERC approved Rover Pipeline[.]" (*Id.* at ¶2). Rover also argued that a settlement agreement between the parties in the principal *Rover Pipeline* litigation required plaintiffs to submit "any dispute 'relative to the easements'" to me for binding mediation, thereby precluding plaintiffs from bringing their claims in this suit. (*Id.* at ¶7).[2]

---

[1] The notice of removal alleged that the court also has diversity jurisdiction (Doc. 1 at ¶3), but neither the notice nor Rover's opposition to the remand motion identifies Rover's citizenship or that of the other defendants in this case. Despite ample opportunity to do so, Rover has not established that the court has diversity jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted).

[2] Although 28 U.S.C. § 1446(b)(2)(A) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action," none of the other defendants in the state-court case – ET Rover Pipeline LLC; Precision Pipeline, LLC; and Precision Pipeline Construction Company – joined Rover's notice or gave written consent to the removal. Neither the state court's docket nor Rover's filings establish whether plaintiffs properly served these other defendants. Rover has apparently taken the position, at least in its discussions with the plaintiffs, that Precision Pipeline, LLC is not a "proper party" (Doc. 6 at 14 n.4), but it has not asserted that position – let alone explained it – in its papers here. Because I ultimately conclude that remand is warranted, and because the issue does not go to subject-matter jurisdiction, I need not decide whether Rover's non-compliance with § 1446(b)(2)(A) provides an additional basis for remand. *See Hicks v. Emory Worldwide, Inc.*, 254 F. Supp. 2d 968, 972–73 (S.D. Ohio 2003) ("A Notice of Removal filed by less than all defendants is considered defective if it does not contain an explanation for the non-joinder of those defendants.").

Plaintiffs' remand motion argues that their claims arise exclusively under Ohio law. (Doc. 6 at 11). They emphasize, first, that they do not question: 1) Rover's authority to condemn easements across their property; 2) the validity of Rover's FERC Certificate to build the pipeline; or 3) Rover's "ability to exercise complete discretion" within the easement areas. (*Id.*).

Plaintiffs then argue that Rover is simply asserting a federal defense to their state-law claims – i.e., that the FERC Certificate authorizes Rover to do what plaintiffs contend violates Ohio law – and that such a defenses does not create jurisdiction or a basis for removal. (Doc. 11 at 5–6).

Finally, they argue that the settlement agreement in the *Rover Pipeline* case addresses only disputes concerning Rover's right to immediate possession of the easements. In contrast, the complaint here concerns "Rover's conduct outside of the easement area" and after Rover took possession and began building the pipeline. (*Id.* at 7) (internal emphasis omitted).

## Discussion

"Federal district courts 'have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331, and any action which could have been brought in federal court may be removed to federal court, 28 U.S.C. § 1441(a)." *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012).

"Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint established either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983).

"'Since a defendant may remove a case only if the claim could have been brought in federal court, . . . the question for removal jurisdiction must also be determined by reference to the well-pleaded complaint.'" *Hampton*, *supra*, 683 F.3d at 711 (internal quotation marks and citation omitted).

"The burden of showing that the district court has original jurisdiction is on the party seeking removal." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).

### A. Federal-Question Jurisdiction

"For statutory purposes, a case can arise under federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

First, "a case arises under federal law when federal law creates the cause of action asserted." *Id.*; *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("the vast majority of cases brought under the general federal-question jurisdiction . . . are those in which federal law creates the cause of action").

Second, a cause of action that state law creates may nonetheless arise under federal law "if the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc); *see also Hampton*, *supra*, 683 F.3d at 711 (the state-law claim must "implicate significant federal issues").

"Most importantly, for statutory purposes a case only 'arises under' federal law if a federal issue appears amid the plaintiff's cause of action." *Dillon v. Medtronic*, 992 F. Supp. 2d 751, 754–55 (E.D. Ky. 2014) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). "If the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the case is not removable." *Palkow v. CSX Transp. Inc.*, 431 F.3d 543, 552 (6th Cir. 2005).

For that reason, federal defenses cannot create "arising under" jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense") (emphasis in original); *accord Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

**1. State Law, Not Federal Law, Creates the Causes of Action**

"In assessing federal-question jurisdiction, the first question is what body of law creates the cause of action." *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 587 (6th Cir. 2013).

There is no question that Ohio tort law creates at least seven of the plaintiffs' eight causes of action: trespass, nuisance, negligence/hazardous waste, tortious interference with business, declaratory judgment, injunctive relief, and punitive damages. These causes of action, as they appear in plaintiffs' complaint, are pure state-law claims with no foundation whatsoever in federal law.

As an initial matter, I note that Rover's opposition fails to distinguish between the plaintiffs' separate causes of action, even though the existence of federal-question jurisdiction involves a claim-by-claim analysis. *E.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005); *Village of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007); *Wilhite v. City of Richmond, Ky.*, 2007 WL 2020244, *1 (E.D. Ky.).

Instead, Rover lumps all the claims together and, in contending that they all arise under federal law, cites only two paragraphs of the plaintiffs' complaint. (Doc. 7 at 6, 19, 25). But those two paragraphs support only the plaintiffs' abuse of power/bad faith claim (Doc. 1–2 at ¶¶80–81), which I discuss separately, *infra*, at 9–10. Rover's inability to point to even a single allegation from the manifold allegations supporting plaintiffs' other seven causes of action is telling.

7

On the merits, Rover nevertheless contends that plaintiffs' claims arise under the NGA because: 1) plaintiffs supposedly acknowledged that "their claims arise from a dispute as to Rover's rights under the federal [NGA]" (Doc. 7 at 19); and 2) plaintiffs' claims "require a court of competent jurisdiction to make a detailed review and analysis of the Parties' rights, duties and obligations under the federal [NGA]." (*Id.* at 20–21).

These arguments have no merit.

First, nowhere in the complaint do plaintiffs "acknowledge" that their state-law tort claims stem from "a dispute as to Rover's rights under the [NGA]," as the pipeline company erroneously claims.

To the contrary, plaintiffs have emphasized that they do not contest either "the validity of Rover's Certificate of Public Necessity" or Rover's "ability to exercise complete discretion in the manner in which they engage in construction activities within the easement area." (Doc. 6 at 11) (internal emphasis omitted). What plaintiffs allege is that Ohio law forbids Rover from entering onto their land outside the easement and diverting excess water onto their property. Nothing on the face of plaintiffs' complaint suggests that those issues depend on the terms of the FERC Certificate.

Second, with the plaintiffs having disclaimed any attack on the validity of the Certificate or Rover's discretion to conduct operations within the easement areas, nothing on the face of plaintiffs' complaint requires "a detailed review and analysis" of the parties' rights and obligations under the NGA or the Certificate.

The only way that issue will make its way into the case, it seems to me, is if Rover raises either the preclusive or preemptive effect of the FERC Certificate as a defense to the plaintiffs' claims. Indeed, Rover's opposition brief makes clear that it intends to argue that, because the FERC

8

Certificate allegedly authorizes it to dewater the construction areas by pumping water outside the easement areas (and, the company implies, onto the landowners' properties), it cannot be liable to the plaintiffs.

But this is simply a federal defense masquerading as an "essential element" of the plaintiffs' claims, and "a case may *not* be removed to federal court on the basis of a federal defense." *Caterpillar*, *supra*, 482 U.S. at 393 (emphasis in original).

Finally, while the source of plaintiffs' abuse of power/bad faith claim is not readily apparent, I believe the claim is best understood as originating in Ohio law. This is because "neither the Natural Gas Act nor federal common law can be the source of [that] cause of action." *Columbia Gas*, *supra*, 707 F.3d at 587.

For one thing, the NGA "does not create a general private right of action to counter violations of the Act." *Id.* Thus the bad faith/abuse of power claim cannot arise under the NGA.

For another, "at no point do[ the plaintiffs] suggest that [their] action is being brought under a theory creating a new [federal] common-law cause of action." *Id.*; *see also Enable Mississippi River Transmission, LLC v. Nadel & Gussman, LLC*, 2016 WL 1064640, *2 (W.D. La.) (rejecting argument that NGA created plaintiff's claim concerning ownership of escaped natural gas where there was no such "cause of action under the NGA or federal common law"), *aff'd*, 844 F.3d 495 (5th Cir. 2016).

That is, plaintiffs do not argue that I ought to develop a set of common-law principles that would, in effect, superintend how a utility like Rover exercises its rights under a FERC Certificate.

Rather, plaintiffs take it as a given that Rover was entitled to the easements; they simply contend that Rover's actions outside the easements violate the duties that Ohio law imposes. Thus

9

the abuse of power/bad faith claim seems most like a state-law theory focused on Rover's degree of fault that would entitle plaintiffs to increased damages.

Because neither the NGA nor any other federal law creates the landowners' causes of action, none of their claims arises under federal law.

### 2. Plaintiffs' Claims Do Not Implicate Significant Federal Issues

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, *supra*, 568 U.S. at 258.

"The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction." *Mikulski*, *supra*, 501 F.3d at 565.

Rather, "the disputed question of federal law must be a 'necessary element' of the state law claim, such that the state law claim is '*really* one of federal law.'" *Funderwhite v. Local 55, United Assoc.*, --- F. App'x ----, 2017 WL 3129117, *2 (6th Cir.) (quoting *Franchise Tax Bd.*, *supra*, 463 U.S. at 13) (emphasis in original)).

Rover argues that plaintiffs' claims implicate substantial federal issues because the claims' factual predicates – the dewatering of the easement areas and the entries onto the residue of plaintiffs' parcels – "were anticipated, reviewed, approved, directed and overseen by FERC under the NGA[.]" (Doc. 7 at 25).

According to Rover, plaintiffs' claims also depend on "whether Rover's conduct exceeded [its] federal pipeline construction authority granted by FERC under the NGA[.]" (*Id.*). The pipeline company contends that "Plaintiffs' causes of action cannot be separated from an analysis of the

Parties' – as well as FERC's – rights, duties and obligations under the NGA and FERC Certificate." (*Id.* at 26)

In response, plaintiffs reiterate that, while "Rover has the full ability to use the land within its easement however it chooses," the claims at issue here concern "Rover's intentional failure to 'stay in its lane' and [its] wholesale disregard for Plaintiffs' property outside the easement." (Doc. 11 at 6) (internal emphasis omitted).

**a. Necessarily Raised**

Contrary to Rover's arguments, I find that seven of plaintiffs' claims – trespass, nuisance, negligence, tortious interference with business, declaratory judgment, injunction, and punitive damages – neither raise nor implicate any federal issue.

These claims do not refer to Rover's FERC Certificate, the NGA, or any other provision of federal law. *Compare Bd. of Comm'rs of the Se. La. Flood Protection Auth.–East v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 854–59 (E.D. La. 2014) (three state-law tort claims that referred to numerous federal statutes in describing defendants' duties to the plaintiffs necessarily raised federal issues).

Furthermore, plaintiffs' claims all concern Rover's actions outside the easement areas that Rover holds by virtue of federal eminent domain proceedings. In setting forth Rover's duties and its breaches thereof, plaintiffs rely on Ohio law, not Rover's FERC Certificate. (*E.g.*, Doc. 1–2 at ¶56) (alleging that Rover, "while having easement rights pursuant to the U.S. District Court for the Northern District of Ohio's Order, nonetheless still owe a duty not to create a nuisance on the Plaintiffs' properties . . . outside of the easement area").

Given the way plaintiffs have pleaded their claims, it is not necessary, as Rover insists, to adjudicate the parties' "rights, duties and obligations under the NGA and FERC Certificate." (Doc. 7 at 26); *cf. Enable Mississippi*, *supra*, 2016 WL 1064640, at *3 ("[f]ederal courts which have also confronted claims involving FERC certificates have held that no necessary, disputed, and substantial federal question was presented") (collecting cases).

It again bears emphasizing that every federal issue to which Rover alludes will come into the case if, and only if, Rover injects them into it to defend against plaintiffs' claims.

But the fact that Rover's defense will hinge on federal questions does not mean plaintiffs' state-law claims implicate important federal issues. Were it otherwise, any defendant with a relevant federal defense could convert pure state-law claims into federal claims and remove them to district court by pointing to the federal questions that accompany the federal defense. But that is exactly what the law does not allow. *E.g.*, *Beneficial Nat. Bank*, *supra*, 539 U.S. at 6 ("a defense that relies on the preclusive effect of a prior federal judgment or the preemptive effect of a federal statute will not provide a basis for removal") (internal citations omitted); *see also Caterpillar*, *supra*, 482 U.S. at 393 (same); *Franchise Tax Bd.*, *supra*, 463 U.S. at 10 (same); *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (same).

The decision in *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 42 F. Supp. 3d 812 (E.D. La. 2014), illustrates the point.

There plaintiff sued a group of energy companies in state court whose oil- and gas-exploration activities allegedly contaminated the plaintiff's land. *Id.* at 814–15. Although plaintiff brought claims only under Louisiana law for negligence, breach of contract, and breach of that state's

Mineral Code, the defendants removed the case on the ground that "the alleged state law claims cannot be adjudicated without resolving a substantial question of federal law." *Id.* at 15.

According to the defendants, "because the [NGA] requires natural gas companies to obtain certificates from FERC and because plaintiff's claims involve 'FERC certificated activities,'" the plaintiff's claims arose under federal law. *Id.* at 821.

The district court disagreed, holding that resolving plaintiff's state-law tort claims did not entail adjudication of any federal question:

> Badger cites no cases that have found federal jurisdiction over state claims because of their relationship to the regulatory scheme created by the FERC. The plaintiff has sued the Defendants for negligence, breach of contract, and breach of obligations imposed by the Louisiana Mineral Code and Louisiana Civil Code. There are no "substantial federal questions" that must be resolved in order to evaluate these claims. To the extent that the Defendants might use their compliance with FERC as a defense to liability, this argument fails. The Supreme Court has stated that "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint." *Caterpillar*, 482 U.S. at 393.

*Id.* at 821 (internal citation omitted).

For largely the same reasons, I hold that seven of plaintiffs' claims – trespass, nuisance, negligence, tortious interference with business, declaratory judgment, injunction, and punitive damages – raise no substantial federal issue.

Only plaintiffs' abuse of power/bad faith claim seems to "necessarily raise" a federal question.

In pleading that claim, plaintiffs allege that "Rover gains its authority to use its [eminent] domain power through the Federal [NGA]," and that Rover has "used and abused [its] eminent

13

domain power beyond what was intended by Congress and have run roughshod over the rights of Plaintiffs as property owners." (Doc. 1–2 at ¶¶80–81).

To resolve that claim, it will at least be necessary to examine the FERC Certificate to determine what Rover's rights are under the Certificate. Accordingly, I find that plaintiffs' abuse of power/bad faith claim, and only that claim, necessarily raises a federal issue.

### b. Substantial in the Relevant Sense

Even assuming that the question of Rover's rights and obligations under the FERC Certificate are in dispute, I hold that this issue – specifically whether the FERC Certificate authorizes Rover to enter onto the residues of plaintiffs' properties and dewater the easement by pumping water onto that land, regardless of the consequences – is not "substantial in the relevant sense." *Gunn*, *supra*, 568 U.S. at 260.

To create federal-question jurisdiction, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s] a disputed federal issue . . . The substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Id.* (emphasis in original).

The Sixth Circuit has identified four factors that go into the substantiality inquiry: 1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; 2) whether the federal question is important (i.e., not trivial); 3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and 4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated). *Columbia Gas*, *supra*, 707 F.3d at 590.

Despite Rover's attempt to pump up plaintiffs' suit as posing a grave threat to "the entire federally regulated interstate natural gas pipeline industry" (Doc. 7 at 28), the federal question that plaintiffs' abuse of power/bad faith claim presents is insubstantial.

At bottom, that claim concerns whether a single pipeline company complied with or exceeded the boundaries of its FERC Certificate – a Certificate that is necessarily specific to a single pipeline project – and whether such compliance overrides the plaintiffs' state-law tort theories.

Furthermore, there is no federal agency involved in this case, there is no federal statute or federal regulation to interpret, *cf. Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 198, 201–02 (1921) (state-law shareholder suit against corporation turned on constitutionality of federal statute, thereby establishing federal-question jurisdiction), and there are no other cases that will rise or fall depending on how Rover's Certificate affects these landowners' claims, *cf. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) (state-law quiet-title claim arose under federal law because it turned on meaning of contested provision of federal tax law, the interpretation of which would control the outcomes of numerous cases).[3]

\* \* \*

In sum, only one of plaintiffs' state-law causes of action raises a federal issue, and that issue is not "substantial in the relevant sense." *Gunn*, *supra*, 568 U.S. at 260. Accordingly, this court lacks federal-question jurisdiction under the substantial-federal-issue doctrine.

---

[3] Rover claims to have been "informed that the approach taken by Plaintiffs in the present matter is already being replicated by other local landowners and non-landowner interested parties[.]" (Doc. 7 at 29). However, the company has not identified a single pending case similar to the case now before me.

### 3. The Settlement Agreement Does Not Encompass Plaintiffs' Claims

Rover next argues that the settlement agreement between it and the landowners in *Rover Pipeline*, *supra*, creates subject-matter jurisdiction over plaintiffs' claims.

In that case, Rover sought "a preliminary injunction granting it immediate possession of that land – so that it could start building the pipeline according to the FERC-approved construction schedule – and deferring the issue of the landowners' just compensation." *Rover Pipeline*, *supra*, 2017 WL 3130244, at *1. However, Rover and the plaintiffs here ultimately settled as to the issue of immediate possession of the easements.

Contrary to Rover's arguments, the settlement agreement does not bind the plaintiffs to bring their state-law tort claims to federal court. That is because the settlement agreement concerned, simply and solely, Rover's right, and not the consequences of its exercise of that right, to possess the easements. The transcript makes this plain:

> [I]n the event there is any dispute as to the scope of Rover's possessory rights on the easement area or anything else related to this immediate possession issue, that [plaintiffs] will [agree to] first refer all matters to the Court for informal resolution prior to filing motions or any other action.

(Doc. 1–2 at 32).

Nowhere did I propose, or intend to propose, that the parties submit, and nowhere did the plaintiffs agree to submit, the kinds of claims at issue in this case – state-law tort claims having nothing to do with Rover's right to possess the land before paying just compensation – to me for binding resolution.[4]

---

[4] The landowners argue that litigants cannot create subject-matter jurisdiction by consent, and that is of course true. But parties may, as part of a settlement agreement, stipulate that a district court presiding over a case in which it has original jurisdiction may retain jurisdiction to enforce a settlement agreement. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641–45 (6th Cir. 2001).

### 4. The NGA's Preemptive Effect Is Not Relevant to the Existence of Subject-Matter Jurisdiction

Finally, Rover argues that "[t]his Court has jurisdiction of Plaintiffs' claims as Plaintiffs' alleged state law claims are preempted by federal law under the NGA." (Doc. 7 at 35).

This argument has no merit, as it seemingly confuses the substantive law of preemption with the jurisdictional rule of complete preemption. *See Dillon*, *supra*, 992 F. Supp. 2d at 757 ("That federal law ultimately preempts a plaintiff's state claims does not by itself establish jurisdiction."); *Se. Michigan Roofing Contractors Ass'n, Inc. v. C. Davis Roofing, Inc.*, 123 F. Supp. 2d 402, 405 (E.D. Mich. 2000) ("That a defendant raises a substantive federal defense to a state law claim – including a preemption defense – is immaterial for jurisdictional purposes.").

"The complete-preemption doctrine applies in circumstances in which Congress may intend the preemptive force of a federal statute to be so extraordinary that any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Mikulski*, *supra*, 501 F.3d at 563.

To date, the Supreme Court has recognized that only three federal statutes completely preempt state law, and the NGA is not one of the three. *E.g.*, *Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973, 981 (W.D. Tenn. 2014). Rover cites no authority finding that the NGA completely preempts state-law tort claims, and I have found no such case.

Accordingly, I reject Rover's argument that preemption supplies a basis for federal-question jurisdiction over plaintiffs' claims.

---

Thus, if the settlement agreement did encompass plaintiffs' claims, I might have had jurisdiction, in the *Rover Pipeline* litigation, to adjudicate them.

* * *

Because there is no federal-question jurisdiction over any of plaintiffs' claims, I must remand this case to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### B. Attorney Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(h). "[F]ee awards are inappropriate unless the removing party lacked an objectively reasonable basis for seeking removal." *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013).

I have little trouble concluding that Rover's four grounds for removal here were not objectively reasonable.

First, working backwards through Rover's arguments, it is hornbook law that preemption is a defense that neither creates jurisdiction nor supports removal. *See Caterpillar*, 482 U.S. at 393.

Second, the parties' settlement agreement is unambiguous: it concerned only disputes relative to Rover's ability to possess plaintiffs' land before paying compensation; it says nothing about the kinds of claims at issue in this case.

Third, Rover's argument that plaintiffs' claims implicated substantial federal issues failed to distinguish between the separate elements of the eight claims. In any event, as to all of plaintiffs' claims, Rover's arguments were really arguments concerning a federal defense – i.e., the preclusive or preemptive effect of the FERC certificate. Rover presented no argument, moreover, as to why the one claim that did raise a federal issue implicated a substantial federal question, and for the reasons given above, I do not believe that there was a reasonable basis for such an argument.

18

Finally, given that plaintiffs' claims expressly invoked Ohio law, and given the lack of a private cause of action under the NGA, Rover's argument that the NGA somehow created plaintiffs' claims was unreasonable. Rover compounded the error by failing to distinguish between the seven claims that unequivocally arose under Ohio law and the one claim that conceivably could have arisen under, but on closer examination under binding precedent, *see Columbia Gas*, *supra*, 707 F.3d at 587, clearly did not arise under, federal law.

Plaintiffs are therefore entitled to an award of attorney fees and costs in accordance with § 1447(d).

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiffs' motion to remand (Doc. 6) be, and the same hereby, is granted;

2. The clerk of court is directed to remand this case forthwith to the Common Pleas Court of Wood County, Ohio; and

3. Plaintiffs are directed to submit a bill of costs and reasonable attorney fees, supported by affidavits, billing records, and the like, by August 14, 2017; Rover's response due August 28, 2017; and plaintiffs' reply, if any, due September 5, 2017.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge